654 So.2d 552 (1995)
STATE of Florida, Petitioner,
v.
Collin GRAY, Respondent.
No. 83766.
Supreme Court of Florida.
May 4, 1995.
Robert A. Butterworth, Atty. Gen. and Richard L. Polin, Asst. Atty. Gen., Miami, for petitioner.
J. Rafael Rodriguez, Specially Appointed Public Defender of the Law Offices of J. Rafael Rodriguez, Miami, for respondent.
HARDING, Justice.
We have for review Gray v. State, 654 So.2d 934 (Fla. 3rd DCA 1994), in which the district court certified this question as one of great public importance:
WHETHER THE "OVERT ACT" REFERRED TO IN AMLOTTE v. STATE, 456 So.2d 448, 449 (Fla. 1984), INCLUDES ONE, SUCH AS FLEEING, WHICH IS INTENTIONALLY COMMITTED BUT IS NOT INTENDED TO KILL OR INJURE ANOTHER?
We have jurisdiction based on article V, section 3(b)(4) of the Florida Constitution.
Gray also argues that this Court should reexamine its decision in Amlotte. Because we have jurisdiction based on the certified question, we also have jurisdiction over this issue. Feller v. State, 637 So.2d 911, 914 (Fla. 1994).
We find it unnecessary to answer the certified question because we recede from *553 our holding in Amlotte that there is a criminal offense of attempted felony murder.
The relevant facts of this case are that Gray and two codefendants robbed a restaurant in Dade County and fled by car. After police spotted the car, the driver went through a red light and hit another car. The driver of the other car was ejected and rendered a quadriplegic. Gray was convicted of armed robbery with a firearm and attempted first-degree felony murder.
On appeal, the Third District Court of Appeal affirmed the robbery conviction, reversed the attempted first-degree felony murder conviction, and remanded the case for resentencing. Gray, 654 So.2d at 935.
The district court acknowledged that this Court recognized the offense of attempted felony murder in Amlotte. Id. Gray did not dispute that he perpetrated the enumerated felony of robbery. But the district court agreed with Gray that the information charging him did not allege and the State did not offer proof of a separate overt act which could, but did not, cause the death of another. Id.
The court found insufficient evidence to present a jury question of whether the overt act  running the red light, which resulted in the collision  could have caused the victim's death and reversed Gray's conviction for attempted first-degree felony murder. Id. 654 So.2d at 935. The court also certified the question to this Court. Id. at 936.
In Amlotte, we determined by a five-to-two vote that there is a criminal offense of attempted felony murder. 456 So.2d at 449. The essential elements of the crime are (1) perpetrating, or attempting to perpetrate an enumerated felony and, (2) during the commission of the enumerated felony, committing an intentional overt act, or aiding and abetting the commission of an intentional overt act, which could, but does not, cause the death of another. Id. We held that because the attempt occurs during the commission of a felony, the law, as it does under the felony murder doctrine, presumes the existence of the specific intent required to prove attempt. Id. at 449-50.
Justice Overton maintained in a dissent that the crime of attempted felony murder is logically impossible. Id. at 450 (Overton, J., dissenting). He pointed out that a conviction for the offense of attempt requires proof of the specific intent to commit the underlying crime. Id.; see also § 777.04(1), Fla. Stat. (1991).[1] He recognized that the crime of felony murder is based on a legal fiction that implies malice aforethought from the actor's intent to commit the underlying felony. Amlotte, 456 So.2d at 450 (Overton, J., dissenting). This means that when a person is killed during the commission of certain felonies, the felon is said to have the intent to commit the death  even if the killing was unintended. Id. The felony murder doctrine also imputes intent for deaths caused by co-felons and police during the perpetration of certain felonies. Id. at 451. But, Justice Overton maintained, "Further extension of the felony murder doctrine so as to make intent irrelevant for purposes of the attempt crime is illogical and without basis in law." Id.
We now believe that the application of the majority's holding in Amlotte has proven more troublesome than beneficial and that Justice Overton's view is the more logical and correct position.
Recently, the Committee on Standard Jury Instructions in Criminal Cases, which was charged with recommending amendments to various criminal instructions, reported difficulty in drafting an amendment that incorporated the language of Amlotte. In fact, a majority of the committee members believed that there could be no crime of attempted felony murder. Standard Jury Instructions in Criminal Cases (93-1), 636 So.2d 502 n. 1 (Fla. 1994).[2]
*554 The Fifth District Court of Appeal has also voiced concerns. In Grinage v. State, 641 So.2d 1362, 1366 (Fla. 5th DCA 1994) review granted, No. 84,318, 651 So.2d 1196 (Fla. Sept. 8, 1994), the court maintained that the Legislature did not intend for some criminal offenses, including first-degree felony murder, to support a conviction for their attempted commission. The district court said that the offense of murder contemplates a completed act of homicide and suggested that the law should not presume intent to murder when there is no death simply because the assault occurs during the commission or attempted commission of a felony. Id. While recognizing that parts of its analysis were contrary to the Amlotte majority opinion, the court said it had the responsibility "to point out to the court new or additional arguments that should be considered by it in determining whether questioned law should remain in effect." Id. at 1367.
In addition, questioning at oral argument in the instant case indicated difficulties with determining what constitutes an "overt act" that could, but does not, cause the death of another.
Although receding from a decision is not something we undertake lightly, we find that twenty-twenty hindsight has shown difficulties with applying Amlotte that twenty-twenty foresight could not predict. Based on these difficulties, we are convinced that we must recede from Amlotte. The legal fictions required to support the intent for felony murder are simply too great.
In reaching this decision, we are mindful of the importance of the doctrine of stare decisis. Stare decisis provides stability to the law and to the society governed by that law. State v. Schopp, 653 So.2d 1016 (Fla. 1995) (Harding, J., dissenting). Yet stare decisis does not command blind allegiance to precedent. "Perpetrating an error in legal thinking under the guise of stare decisis serves no one well and only undermines the integrity and credibility of the court." Smith v. Department of Ins., 507 So.2d 1080, 1096 (Fla. 1987) (Ehrlich, J., concurring in part, dissenting in part).
Accordingly, we recede from the holding in Amlotte that there is a crime of attempted felony murder in Florida. This decision must be applied to all cases pending on direct review or not yet final. Smith v. State, 598 So.2d 1063, 1066 (Fla. 1992). Having reached this decision, we do not need to answer the certified question in Gray.
We also approve the result in Gray, where the district court affirmed Gray's robbery conviction, reversed his attempted first-degree felony murder conviction, and remanded for resentencing.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] This Court has interpreted section 777.04(1), Florida Statutes (1991) to mean that an attempt to commit a specific intent crime requires (1) a specific intent to commit a particular crime and (2) an overt act toward its commission. See, e.g., Thomas v. State, 531 So.2d 708, 710 (Fla. 1988); but see Gentry v. State, 437 So.2d 1097, 1098-99 (Fla. 1983).
[2] The committee did, however, propose an amendment that incorporated Amlotte, which this Court adopted. Standard Jury Instructions in Criminal Cases (93-1), 636 So.2d 502, 504-05 (Fla. 1994).